**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DWAYNE LAVAUGHN LESTER, | * | |
| **Plaintiff,** | * | |
| v. | * | Case No. 1:18-cv-03749-CCB |
| PATRICK SHANAHAN, Acting Secretary of Defense, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Defendants, Patrick Shanahan, Acting Secretary of Defense, Defense Information Systems Agency, Department of Defense Office of Inspector General, Cindy Your, Jang Suh, Robert Knutti, and Katherine Lloyd, by their undersigned attorneys and pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure, submit this Memorandum of Law in support of their Motion to Dismiss and for Summary Judgment.

## I.  INTRODUCTION

Plaintiff Dwayne Lester ("Lester") was employed by the Defense Information Systems Agency ("DISA"), which is a sub-agency of the Department of Defense, until his retirement in November 2018.  A DISA Office of Inspector General ("OIG") investigation found that Lester: (1) used his government-issued laptop to conduct a private business; (2) viewed inappropriate YouTube content on his government-issued laptop during work hours; and (3) misrepresented the amount of hours that he was present and working at DISA.  Lester's supervisors proposed his

removal from federal service based on the OIG's findings, and Lester retired before DISA adjudicated his proposed removal.

Lester filed this suit claiming that he has been a "staunch defender of discriminatory practices in hiring of African American males/females within the visual information field," and that his supervisors retaliated against him for this conduct by instituting an unlawful OIG investigation based on false information.  (*See* ECF. No. 1 at 2.)  As explained below, this Court lacks subject matter jurisdiction over Lester's suit.  Because Lester's claims arise out of his federal employment, he can only seek relief under two potential statutory schemes:  (1) the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1201 *et seq.*; or (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Lester, however, has not brought an appropriate claim under either of those statutory schemes, and the Court, therefore, lacks jurisdiction to hear this dispute. The Defendants have also offered additional bases for dismissal, which are discussed below.

## II.    FACTUAL BACKGROUND

From approximately December 2010 to November 30, 2018, Plaintiff Dwayne Lester was employed as a Multi-Media Specialist in the DISA Development and Business Center, Office of Strategic Communications and Public Affairs located at Fort George G. Meade, Maryland ("Ft. Meade.")  Decl. of C. Your ¶ 3, attached as **Exhibit 1**.  On June 28, 2017, the DISA OIG Hotline received a complaint that Lester was, among other things, using his DISA-issued laptop to conduct private business during time that he was supposed to be working.  *See* Decl. of J. Suh ¶ 3, attached as **Exhibit 2**.  Defendants Nancy Solomon and Jang Suh were the OIG investigators assigned to the case.  *Id.* ¶ 4.  Their investigation consisted of, among other things:  (1) interviewing 11 witnesses; (2) examining Lester's Automated Time, Attendance, and Production ("ATAAPS") certification records; (3) building access records; (4) Defense Enterprise Email records; (5)

2

telephone records; and (6) a forensic analysis of his DISA-issued laptop computer.[1]  *See* DISA OIG Report of Investigation at 2, attached as **Exhibit 4**.  Generally, the OIG found three types of inappropriate workplace conduct.

First, the OIG found that Plaintiff was using his DISA-issued laptop to manage and transact private business during work hours.  *See* **Ex. 4** at 1.  The OIG Digital Forensics Team examined the web browser history and file system history of Lester's DISA-issued laptop.  *See* Decl. of K. Jamison ¶ 3, attached as **Exhibit 5**.  That examination found 52 images that were downloaded to Lester's computer and his personal manuscript for a publication titled "Through My Eyes with a Pencil. An Illustrated History of 100 Greatest African American Athletes of the 20th Century." *Id.*  Lester also used his government landline telephone to communicate with a publishing company, Mascot Books.  **Ex. 2** ¶ 4.

Plaintiff also used his government email to conduct his private business.  *See* **Ex. 2** ¶ 5. On July 21, 2017, Lester communicated with another employee stationed at Ft. Meade and agreed to paint a portrait of the employee and his family posing with Eric Weddle, who was then a football player for the Baltimore Ravens.  *Id.*  Lester accessed the PayPal website using his laptop and generated an invoice, which he emailed to the purchasing employee.  *Id.*

Lester routinely accessed the website FineArtAmerica.com, which is a website that allows members to create their own sites and sell personal items online.  **Ex. 5** ¶ 6.  Lester had several

---

[1]  Plaintiff signed DISA Form 786 (DISA Statement of Information System Use and Acknowledgement of User Responsibilities) dated April 6, 2012, which states that, "[a]t any time, the U.S. Government may inspect and seize data" stored on his government-issued laptop.  *See* Executed DISA Form 786 at 1, attached as **Exhibit 3**.  The Form 786 also states that data stored on the government-issued laptop is not private and is subject to routine monitoring, interception, and searching and may be disclosed or used for any U.S. Government-authorized purpose.  *Id.*

items for sale on this site, including images that were found on his laptop.  *Id.*  Lester also accessed

the website, Brofmadcty.com, which he utilized to showcase his artwork.  *Id.* ¶ 7; **Ex. 2** ¶ 6.

Second, OIG found that Plaintiff was spending significant time watching YouTube videos

while at work.[2]  *See* **Ex. 2** ¶ 7; **Ex. 5** ¶ 9.  Specifically, Plaintiff accessed 263 sites on YouTube,

of which 21 sites contained images and/or language that OIG determined were inappropriate for

the workplace.  *See* **Ex. 2** ¶ 7; **Ex. 5** ¶ 9; *see also* **Ex. 4** at 14, 15 (listing the inappropriate YouTube

content).

Third, OIG found time and attendance violations where Plaintiff certified through the

ATAAPS system that he had worked more hours than he actually worked.  **Ex. 2** ¶ 8; **Ex. 4** at 15-

18.  From January 3, 2017 through June 30, 2017, Plaintiff's timesheets, in comparison to the

turnstile reports of entrance and exit of DISA Facilities at Ft. Meade, revealed that he coded his

ATAAPS for 113.50 hours of regular time, which was unaccounted for, and for which he was not

present at his official duty station in the DISA Buildings at Ft. Meade.  **Ex. 2** ¶ 8; **Ex. 4** at 15-18.

OIG concluded in its Report of Investigation that Lester:  (1) misused his official time from

January 1, 2017 through August 22, 2017, in violation of 5 CFR Section 2635.705, Use of official

time; (2) misused government-provided information technology, from January 1, 2017 through

August 22, 2017, by conducting personal business and viewing inappropriate material on his

assigned property, in violation of 5 CFR Section 2635.101(9) and DISA Instruction 630-225-15;

and (3) improperly accounted for his time and attendance from January 1, 2017 to June 30, 2017,

in violation of Department of Defense (DoD) Financial Management Regulation (FMR) 7000.14-

---

[2] Lester's web history also included searches for "how to delete top sites form history on mac," "covering up evidence," "does the IG have to tell you you're being investigated," "doing outside work on a federal computer," "work on a federal computer," and "personal work on a federal computer."  **Ex. 5** ¶ 5.

R, Volume 8, Civilian Pay and Policy, Chapter 2, Time and Attendance, paragraph 020304, accounting for Time and Leave (August 2015). *See* **Ex. 4** at 1-2.

Based on the OIG report, Lester's third-level supervisor, Cindy Your, proposed his removal based on the following charges: (1) 68 instances of unauthorized use of government property; (2) 132 instances of conduct unbecoming of a federal employee; and (3) 65 instances of absence without leave. *See* **Ex. 1** ¶ 11; *see also* Nov. 1, 2018 Notice of Proposed Removal, attached as **Exhibit 6**. Lester's fourth-level supervisor, Katherine Lloyd, would have been the deciding official with respect to Lester's proposed removal, but Lester retired before she adjudicated the proposed removal. *See* Decl. of K. Lloyd ¶ 6, attached as **Exhibit 7**.

### III.    PROCEDURAL BACKGROUND

On December 20, 2018, Lester made an informal complaint to the Equal Employment Opportunity ("EEO") Office alleging race, color, age, and disability discrimination arising out of the OIG investigation and his proposed removal. *See* Decl. of A. Connor ¶¶ 3-4 attached as **Exhibit 8**; *see also* EEO Counselor's Report, EEO Intake Questionnaire, and Dec. 10, 2018 Letter from Plaintiff, attached collectively as **Exhibit 9**. On January 9, 2019, the EEO Office notified Lester of his right to file a formal complaint of discrimination, which required Lester to file any formal complaint of discrimination within 15 days of the Notice. *See* **Ex. 8** ¶ 3; Jan. 9, 2019 Notice of Right to File, attach as **Exhibit 10**. Lester did not file a formal discrimination complaint. *See* **Ex. 8** ¶ 3. The Agency also does not have a record of Lester filing an administrative tort claim. Decl. of C. Hitzel ¶ 3, attached as **Exhibit 11**.

Lester filed in his complaint in this Court on December 6, 2018. (ECF No. 1.) Lester claims that he has been a vocal advocate for the hiring and promotion of minority candidates within DISA, and that his supervisors tried to silence him by instituting an OIG investigation based on

false information.  (*See id.* at 2.)  Plaintiff alleges, among other claims, employment claims (5

U.S.C. § 2302, 42 U.S.C. § 12203), tort claims (defamation, abuse of process), and constitutional

claims (First and Fourth Amendment).

In addition to naming the Secretary of Defense, DISA, and the DISA OIG as defendants,

Plaintiff named the following six individuals:

1) Robert Knutti, Chief of Visual Information Branch and Plaintiff's second-line
   supervisor (former)

2) Cindy Your, former Chief of the Office of Strategic Communication and Public
   Affairs, and Plaintiff's third-line supervisor

3) Katherine Lloyd, Deputy of the Development and Business Center and
   Plaintiff's fourth-line supervisor

4) Lieutenant General Alan R. Lynn, Director of DISA (former)

5) Jang Suh, OIG Investigator

6) Nancy Solomon, OIG Investigator (former)

(ECF No. 1 at 1.)  Undersigned counsel currently represents all of the individual defendants except

former DISA Director Alan Lynn and former DISA OIG Investigator Nancy Solomon.  Lynn and

Solomon no longer work for DISA.  There is no evidence that they have been properly served, and

it is unknown whether they are aware that they have been named defendants in this suit.[3]  Lynn is

only identified in the caption, and it is not clear whether Plaintiff named Lynn in his individual or

official capacity.  Solomon is only identified the body of the Complaint twice.  (ECF No. 1 at 4,

6.)  As explained below, this Court lacks subject matter jurisdiction to adjudicate this suit and

Plaintiff has failed to state a claim against any defendant.  Thus, although undersigned counsel

---

[3] Because there is no evidence that these two individuals have been served, the Complaint against
them is subject to dismissal under Rule 4(m) of the Federal Rules of Civil Procedure.

does not represent Lynn and Solomon, any dismissal or summary judgment would apply to the claims against them, as well.

## IV.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the authority to hear and decide the case. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). When a defendant challenges subject matter jurisdiction, the "court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991)). In addition, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citation omitted).

### B.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" thereby "'nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (correction in original).

Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679).

### C.  Rule 56

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation

marks omitted), and "cannot defeat summary judgment with merely a scintilla of evidence." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009) (citing *Anderson*, 477 U.S. at 251).

## V.   ANALYSIS

### A. This Court lacks subject matter jurisdiction over Plaintiff's employment-related dispute.

Plaintiff has the ability to challenge certain employment decisions; however, any challenge must be brought pursuant to the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1201 *et seq*. "It is well established that Sovereign immunity removes subject matter jurisdiction in lawsuits against the United States and its agencies unless the United States has consented to suit, thereby waiving its sovereign immunity." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The CSRA provides the exclusive remedy for a federal employee to challenge an employment action, and the CSRA does not provide for judicial review in this Court for Lester's claims.

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto,* 484 U.S. 439, 455 (1988)). "The availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue." *Id.* at 12. For example, where an employee is removed from federal service, the employee may seek review by the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. § 7512; *Bolton v. Colvin,* 674 F. App'x 282, 286 (4th Cir. 2017); *Kloeckner v. Solis*, 568 U.S. 41 (2012). For less severe personnel actions—including reassignments, performance evaluations, or significant changes in duties, responsibilities, or working conditions—a plaintiff alleging a violation must first seek corrective action from the Office of Special Counsel ("OSC") before seeking MSPB review. 5 U.S.C. §§ 1214, § 2302(a)(2)(A); *McCarthy v. MSPB*, 809 F.3d 1365,

1374 (Fed. Cir. 2016).  Federal employees dissatisfied with MSPB's final decision may generally file a petition for judicial review with the Court of Appeals for the Federal Circuit.[4] 5 U.S.C. §§ 1214(c); 7703(b)(1); 7701(c)(1)-(3); *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2130-31 (2012).

These, and other provisions of the CSRA, provide the exclusive remedies for a federal employee to challenge an employment action to the exclusion of all other statutory remedies.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered  employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000)("Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship."); *see also Bolton v. Colvin*, 674 F. App'x 282, 290-91 (4th Cir. 2017); *Mann v. Haigh*, 120 F.3d 34, 38 (4th Cir. 1997); *Lim v. United States*, 2011 U.S. Dist. LEXIS 71793, *10-11, 2011 WL 2650889 (D. Md. 2011)(dismissing all tort and constitutional claims on the basis that the CSRA preempted such claims). The exclusivity of the CSRA applies, even in instances where the CSRA does not provide an administrative remedy or judicial review of a particular employment decision. *Elgin v. Dep't of Treasury* 567 U.S. at 10-11; *see also Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 851-52 (E.D. Va. 2016)("an aggrieved federal employee's statutory remedies for claims arising from the federal employment relationship are limited; only the remedies available under the CSRA may be pursued . . . .")

---

[4] Where an employee also claims discrimination or retaliation based upon a protected class, the entire "mixed case" may be reviewed by a district court. 5 U.S.C. § 7703(b)(2); *Elgin*, 132 S. Ct. at 2134.  As explained in the following section, Plaintiff cannot bring a Title VII action and, therefore, this is not a "mixed case."

Here, there is no evidence that Lester exhausted his administrative remedies with the MSPB or the OSC, but even if he had, only the Court of Appeals for the Federal Circuit would have jurisdiction to review those claims. *See* 5 U.S.C. §§ 1214(c), 7703(b)(1). The Court, therefore, must dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

The Court should note that the arguments presented in the following sections are only offered in the alternative. The CSRA is the exclusive remedy for challenging employment actions, and that exclusivity preempts the tort and constitutional/*Bivens* claims alleged in Lester's Complaint.[5] *See Hall*, 235 F.3d at 203; *Lim*, 2011 WL 2650889 (D. Md. 2011).

### B. Any Title VII claim must be dismissed for the failure to exhaust administrative remedies.

It is not clear whether Plaintiff is alleging a discrimination claim under Title VII;[6] however, any Title VII claim must be dismissed for Plaintiff's failure to exhaust administrative remedies. Before filing a Title VII lawsuit, a plaintiff must exhaust his administrative remedies. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n. 4 (1977); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Where a plaintiff fails to exhaust administrative remedies, the court lacks subject matter jurisdiction over the subsequently filed Title VII claim. *See Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Rather than "a formality to be rushed through," the exhaustion requirement is "an integral part of the Title VII enforcement scheme." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Requiring an employee to pursue an agency's administrative

---

[5] The CSRA also provides the remedy under Lester's claim under the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302. *See Dotson v. Griesa*, 398 F.3d 156, 163-64 (2d Cir. 2005).

[6] Plaintiff cites the retaliation provisions of Title VII, 42 U.S.C. § 12203, but his Complaint does not identify the particular protected activity that he engaged in other than generally asserting that he has been a "staunch defender of discriminatory practices[.]" (ECF No. 1 at 2.)

11

channels places the agency on notice of the alleged discrimination and gives agency officials an important opportunity to investigate and resolve the allegedly unlawful actions. *Id*.  In pursuing administrative remedies, "[i]t is not enough that plaintiff takes an initial step or steps and then abandons the process." *Jordan v. United States*, 522 F.2d 1128, 1132 (8th Cir. 1975). The agency must "have the opportunity to exercise its discretion, to apply its expertise, and, possibly, to discover and correct its own errors." *Id*.

Lester started but then abandoned the Title VII administrative process.  On December 20, 2018, Lester made an informal complaint to the EEO Office alleging race, color, age, and disability discrimination arising out of the OIG investigation and his proposed removal. *See* **Ex. 8 ¶¶** 3-4; **Ex. 9**.  On January 9, 2019, the EEO notified Lester of his right to file a formal complaint of discrimination, which required Lester to file any formal complaint of discrimination within 15 days of the Notice.  **Ex. 8 ¶** 3; **Ex. 10**.  Lester, however, never filed a formal complaint of discrimination.  **Ex. 8 ¶** 3.  Accordingly, he has not exhausted administrative remedies and this Court lacks jurisdiction over any Title VII claim.

## C.   <u>This Court lacks jurisdiction to adjudicate Plaintiff's tort claims.</u>

Plaintiff alleges tort claims of abuse of process and defamation.  Any tort claim against the federal government must comply with the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The FTCA permits a limited waiver of sovereign immunity by the government for an individual to sue the United States for personal injury caused by the wrongful conduct of its employees acting within the scope of their employment.  "[T]he circumstances of its waiver must be scrupulously observed and not expanded by the courts." *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (citing *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979)).

Pursuant to the FTCA, the United States is the only proper party defendant.  *See* 28 U.S.C.

§§ 1346(b), 2679; *Baird v. Haith*, 724 F. Supp. 367, 376-77 (D. Md. 1988).  The FTCA states:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  The U.S. Attorney for the District of Maryland has provided the

Certification required by this provision, and has certified that Defendants Your, Lynn, Suh,

Solomon, Knutti, and Lloyd were acting within the scope of their federal employment at all times

relevant to this Complaint.  *See* Scope Certification, attached as **Exhibit 12**.  Accordingly, this

Court must dismiss any tort claim against the individual defendants and substitute the United States

as the proper defendant.

Among its other mandatory terms, the FTCA provides that a plaintiff must exhaust

administrative remedies by, *inter alia*, filing a claim with the "appropriate Federal agency."  28

U.S.C. § 2675(a).  A tort claim against the United States is "forever barred" unless it is presented

in writing to such agency within two years after the claim accrues.  28 U.S.C. § 2401(b).  Lester,

however, did not file an administrative tort claim.  *See* **Ex. 11** ¶ 3.  He, therefore, has not exhausted

his administrative remedies, and the Court lacks jurisdiction to adjudicate his tort claims.

The Court should note that even if Lester had exhausted administrative remedies, the FTCA

does not waive sovereign immunity with respect to Lester's alleged torts.  Lester claims that the

OIG investigation was an abuse of process, and he also claims that the OIG's findings and other

statements by his supervisors were defamatory.  (*See*, *e.g.*, ECF No. 1 at 10, 11.)

The FTCA, however, only waives sovereign immunity with respect to abuse of process

committed by "law enforcement investigative officers" who are "empowered by law to execute

searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Of the named defendants, the only potential "law enforcement investigative officers" are the OIG investigators, but as Jang Suh stated in his Declaration, as an OIG investigator, he was not authorized by law to execute searches, seize evidence, or make arrests. **Ex. 2** ¶ 10.  Accordingly, the Court lacks jurisdiction to hear Lester's abuse of process claims.

The FTCA also does not waive sovereign immunity for "libel, slander, [and] misrepresentation." 28 U.S.C. § 2680(h).  Although section 2680(h) does not list "defamation," the Fourth Circuit has found that "libel, slander, [and] misrepresentation" were intended to cover all conduct falling within the "heartland of the tort of defamation." *See Talbert v. United States*, 932 F.2d 1064, 1066-67 (4th Cir. 1991) (quoting *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982)).  Accordingly, the Court must dismiss Lester's defamation claim.[7]

### D.  Plaintiff has not stated a *Bivens* claim against the individual defendants, and they are otherwise entitled to qualified immunity.

Lester claims that he was "silenced," in violation of the First Amendment and that the OIG investigators "hacked" into this personal accounts in violation of the Fourth Amendment. (*See* ECF No. 1 at 2, 5.)  In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), the Supreme Court recognized a private cause of action for certain constitutional violations. A *Bivens* plaintiff must establish that he or she was harmed by a constitutional violation. *See Goldstein v. Moatz*, 364 F.3d 205, 210 n. 8 (4th Cir. 2004) (stating that *Bivens* requires proof of two elements, the first being "a violation of [] constitutional rights,"); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (stating that *Bivens* recognized cause of action against federal officers "alleged to have violated a

---

[7] Plaintiff cites 28 U.S.C. § 4101, likely as a basis for his defamation as this statute includes a definition of "defamation." *See* 28 U.S.C. § 4101(1).  This chapter of Title 28, however, relates to recording foreign judgments and does not apply here.

citizen's constitutional rights.") (citations and quotations omitted).  Here, Lester has not stated a *Bivens* claim because he has not explained how the defendants violated either the First Amendment or the Fourth Amendment of the Constitution.

To state a First Amendment claim, Lester must show "'self-censorship, which occurs when a claimant is chilled from exercising h[is] right to free expression.'" *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (citations omitted).  Lester conclusively asserts that the OIG investigation was an attempt to "silenc[e]" him because he has been a "staunch" defender of discriminatory practices, but he does not articulate how the OIG investigation, which found multiple instances of malfeasance, objectively chilled his First Amendment rights.  (*See* ECF No. 1 at 2); *Iqbal*, 556 U.S. at 681 (stating "conclusory allegations [are] not entitled to be assumed true.")  Lester also does not explain how any particular defendant acted to chill his First Amendment rights.  *See Iqbal*, 556 U.S. at 676 (a *Bivens* plaintiff "must plead that each Government-official defendant . . . has violated the Constitution.")  Accordingly, any First Amendment claim should be dismissed.

Lester also claims that the OIG investigators violated the Fourth Amendment's prohibition on warrantless searches and seizures when it "hacked" into his personal Gmail and PayPal accounts.  (ECF No. 8) ("Suh and the IG Hacked Mr. Lester personal Home email and his personal PayPal account . . . .")  Again, Lester's conclusory allegations are insufficient to state a *Bivens* claim against any particular defendant.

Additionally, the OIG findings and the attached declarations show that the OIG investigators did not "hack" Lester's PayPal or Gmail account.  **Ex. 4** ¶ 10.  They reviewed the file history and browser history of Lester's DISA-issued laptop, which Lester acknowledged was not "private" and could be inspected "[a]t any time."  *See* **Ex. 3**; **Ex. 5** ¶ 3.  For example, the OIG found PayPal-related communications on Lester's "DEE" or "Defense Enterprise Email," which

is his government email.  *See* **Ex. 4** at 10-12.  Despite Lester's claim that the OIG hacked into his personal email account, the OIG was only able to see the subject line of two emails sent by Lester by viewing the browser history on his government-issued laptop.  *See* **Ex. 4** at 13.  OIG was not able to see the substance of the emails or any other emails in Lester's Gmail account. *See id.*  Thus, Lester's conclusory assertion that the OIG investigators "hacked" into his personal Gmail and PayPal accounts is not true.

The Court should also dismiss any *Bivens* claim against the individual defendants because they are protected by qualified immunity.  Qualified immunity affords government officers protection from suits for monetary damages when a government official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Because qualified immunity is an immunity from suit, and not merely an immunity from liability, 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The doctrine of qualified immunity applies to officials "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted). The Supreme Court has stated: "[p]ut simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

Maryland applies the two-step analysis for qualified immunity established in *Saucier v. Katz*, 533 U.S. 194 (2001).  The first step requires the court to decide "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [government official's] actions violated a constitutional right." *Meyers v. Baltimore Cnty., Md*., 713 F.3d 723, 731 (4th

Cir. 2013) (citing *Saucier*, 533 U.S. at 201).  The second step requires the court to determine whether "the right at issue was 'clearly established' at the time of the officer's conduct." *Id.* (citing *Saucier*, 533 U.S. at 201).

Lester cannot defeat the individual defendants' qualified immunity.  As explained previously, Lester has not shown that any individual defendant violated a "clearly established" constitutional right.  The OIG investigated an allegation that it received on its hotline, the OIG substantiated those allegations through a lawful investigation that was conducted appropriately, and DISA justifiably proposed Lester's removal based on the OIG findings.  There is no credible factual allegation in the Complaint that any of the individual defendants violated the Constitution. Thus, the individual defendants are entitled to qualified immunity, and the Court should enter judgment in their favor on any First Amendment or Fourth Amendment *Bivens* claim.

### E.  Plaintiff's remaining causes of action lack a waiver of sovereign immunity and otherwise fail to state a claim.

Lester also cites several other statutes that neither establish this Court's jurisdiction nor state a claim.  Lester cites two criminal statutes, 18 U.S.C. § 1037 and 18 U.S.C. § 1026, which do not create a private right of action.  Lester cites the False Claims Act, 31 U.S.C. § 3729, which applies to false claims for payment submitted to the government, and which has no applicability here.  Lester also cites 29 U.S.C. § 158, which protects an employee's right to join a labor organization, and 41 U.S.C. § 4712, which protects federal-contractor whistleblowers; neither of these statutes waive sovereign immunity nor have any factual applicability here.

### VI.    CONCLUSION

WHEREFORE, the Defendants respectfully request that the Court dismiss the Complaint or enter summary judgment in favor of the Defendants.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:    _____/s/_____
Matthew P. Phelps, No. 17933
Assistant United States Attorney
U.S. Attorney's Office
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800
Matthew.Phelps@usdoj.gov